**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

OCT 1 5 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **AXA CORPORATE SOLUTIONS LLOYDS,** | § § § | |
| **Plaintiff,** | § § | |
| | § | Civil Action No. B 03-180 |
| **V.** | § § | |
| **TEX-MEX COLD STORAGE, INC.** | § § | |
| **Defendants.** | § § § | |

---

## PLAINTIFF'S PETITION FOR DECLARATORY RELIEF

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Plaintiff AXA Corporate Solutions Lloyds and, pursuant to 28 U.S.C. § 2201 and FRCP 57, files its petition seeking the Court's declaration of rights under the appraisal provision of the insurance agreement between AXA Corporate Solutions Lloyds and Defendant Tex-Mex Storage, Inc. In support of this Petition, the Plaintiff would respectfully show the Court as follows:

### I.  Parties & Jurisdiction

1.1.    The Plaintiff, Axa Corporate Solutions Lloyds, is an unincorporated association of underwriters whose individual underwriters are all residents and citizens of the State of Colorado. For the purposes of federal jurisdiction, the citizenship of an unincorporated assocation, such as Plainiff, is solely determined by the citizenship of its underwriters. *See Massey v. State Farm Lloyds Ins. Co.*, 993 F. Supp. 568, 570 (S.D. Tex. 1998) (indicating the U.S. Supreme Court and Fifth Circuit have been equally clear regarding jurisdictional citizenship of unincorporated associations in

concluding that the citizenship of a Lloyds insurer must be determined by its underwriters); *Royal Ins. Co. v Quinn-L Capital Corp.*, 3 F.3d 877, 882 (5th Cir. 1993). Therefore, Plaintiff's citizenship, for jurisdictional purposes, is in the State of Colorado.

1.2.    The Defendant, Tex-Mex Cold Storage, Inc., is a corporation whose principal place of business is in Brownsville, Cameron County, Texas. Defendant may be served with citation by serving its president, Emilio Sanchez, at 6665 East 14th Street, Brownsville, Texas 78523.

1.3.    Because Plaintiff's underwriters are not citizens of Texas and Defendant is a citizen of Texas, complete diversity exists between the parties.

1.4.    The Court has original jurisdiction in this civil matter, pursuant to 28 U.S.C. 1332(a), because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

## II. Venue

2.1.    Venue is proper in this district because jurisdiction is founded only on diversity of citizenship and the Defendant, a corporation, is subject to its personal jurisdiction and is, therefore, deemed to "reside" in the judicial district. 28 U.S.C. 1391(a) and (c).

## III. Facts

3.1.    Defendant, Tex-Mex Cold Storage, Inc., submitted a claim for insurance benefits to Plaintiff, AXA Corporate Solutions Lloyds ("AXA"), for roof damage sustained during a storm on April 8, 2003 at the insured property located at 6665 E. 14th Street, Brownsville, Texas 78521 ("the Claim"). Defendant retained a public adjuster, Royce Cody of Marshall & Associates, to represent Defendant in relation to the Claim.

3.2.    Defendant submitted the Claim under the ICAT Named Peril Commercial Policy

(Form ICAT DIC 100 (10 01)) issued by AXA, policy number 42-6560002388-C-01, which includes a Wind and Hail Cause of Loss Coverage Endorsement (Form ICAT NPCP 204 (10 01). The effective policy period is February 28, 2003 to February 28, 2004. A true and correct copy of the effective policy ("the Policy") is attached hereto as Exhibit "A" and is incorporated herein by reference.

3.3.    Upon receiving notice of the Claim, Plaintiff began its investigation of the Claim through Crawford & Company. To assist Plaintiff in determining the extent of the covered portion of the claimed roof loss—i.e., the scope of the damage caused by wind and/or hail—Plaintiff also retained Haag Engineering. After completing its investigation, including an inspection of the roof, Haag Engineering opined that wind and/or hail did not damage a portion of the claimed loss. Haag Engineering also made recommendations regarding needed repairs.

3.4    Based on the opinion and recommendations of Haag Engineering, Plaintiff's independent adjuster determined the estimated actual cash value of the repair work for the covered portion of the roof loss. However, Defendant does not agree with the opinion of Haag Engineering, but rather contends that all of the claimed roof damages resulted from hail. At Defendant's request, Plaintiff tendered payment based on the estimated ACV of the undisputed portion of the loss. Defendant accepted the payment of the undisputed amount of loss and, at or about the same time, demanded an appraisal as to the remaining damages and provided the name of its chosen appraiser.

3.7.    Plaintiff initially submitted to the appraisal process by selecting its appraiser. However, Plaintiff later recognized that the dispute between Plaintiff and Defendant is not appropriate for submission to the Policy's appraisal process because the appraisers would be required to make a coverage determination before they could appraise the value at the time of loss and the amount of

loss.  Plaintiff also learned the appraisers did not have the correct policy provision for the appraisal process; the appraisers instead have an "Agreement for Submission to Appraisers (Homeowners)" that quoted the appraisal provision of a homeowners' policy and listed the appraisers' duties in accordance with a homeowners' policy.  A true and correct copy of the "Agreement for Submission to Appraisers (Homeowners)" is attached hereto as Exhibit "B" and is incorporated herein for all purposes.

3.8.    Plaintiff notified Defendant, in writing, that it would not proceed with the appraisal as it is being conducted.  Plaintiff's letter to Defendant explained that an appraisal, which includes coverage determinations, will not be binding on the parties unless otherwise agreed.  Plaintiff also expressed other concerns it had regarding the appraisal as well as the need for Defendant to allow Haag Engineering access to the roof for core samples. As an alternative, Plaintiff indicated that it would participate in mediation in an attempt to resolve all disputed issues.  Plaintiff also offered to pay the appraisal costs already incurred by Plaintiff.  Plaintiff requested that Defendant respond by October 10, 2003 to advise whether or not Defendant would agree to withdraw the Claim from the appraisal process and move forward with mediation.  A true and correct copy of Plaintiff's letter to Defendant is attached hereto as Exhibit "C" and is incorporated herein for all purposes.

3.9.    Defendant rejected Plaintiff's offer to mediate and insists on proceeding with the appraisal process.  A true and correct copy of Defendant's response to Plaintiff is attached hereto as Exhibit "D" and is incorporated herein for all purposes.  Therefore, Plaintiff petitions the Court to enforce the appraisal provision of the Policy and order that the appraisal not proceed until the scope or extent of the covered loss is determined by a court or by agreement of the parties and that, in such

appraisal process, the authority of the appraisers and umpire shall not exceed the authority conferred upon them by the Policy.

## IV. Argument & Authorities

4.0.    The Court, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought.  28  U.S.C. § 2201.

4.1.    An appraisal award that is made pursuant to the provisions of the insurance contract is binding and enforceable. *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App.—Dallas 1996, writ denied).  However, Texas courts recognize the following three situations under which an appraisal award may be disregarded:  (i) when the award was made without authority; (ii) when the award was the result of fraud, accident, or mistake; and (iii) when the award was not the made in substantial compliance with the terms of the contract. *Id.*; *Providence Lloyds Ins. Co. v. Crystal City Ind. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.—San Antonio 1994, no writ).  In the case before the Court, the appraisal award, if the appraisal continues as it was proceeding prior to this action, will be made without authority and/or not in substantial compliance with the terms of the Policy.

4.2.  The Policy that is subject of this petition provides for an appraisal pursuant to the following language under Article XXVI:

> **Appraisal**
>
> If You and We fail to agree as to the value of the property or amount of loss, damage or expense, each shall, on the written demand of the either, select a competent and impartial appraiser, and the appraisal shall be made at a reasonable time and place.  The appraisers shall first select a competent and impartial umpire, and failing for fifteen (15) days to agree upon

such umpire, then, on the request of the Named Insured or the Company, such shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the value at the time of loss and the amount of loss, and failing to agree, shall submit their differences to the umpire. A decision agreed to by any two shall determine the amount of loss and shall be binding. You and We shall each pay our chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. We shall not be held to have waived any of Our rights by any act relating to appraisal.

4.3.    The above-quoted appraisal section of the Policy, as a matter of law, does not authorize the appraisers and umpire to determine that wind and/or hail did or did not cause the disputed damage. *See, e.g., Wells,* 919 S.W.2d at 685-6 (concluding that the appraisers exceeded the authority conferred upon them by the insurance policy in determining that a plumbing leak did not cause the loss). The Policy provides that the appraisers, in this case, may be extended authority to appraise the value at the time of loss and the amount of loss. As in *Wells,* the appraisers' function in the present action is to appraise the amount of damage submitted for their consideration, not to resolve the coverage issue. *See id.* at 685. Absent an agreement to the contrary, questions of causation or coverage are for the court to decide. *See id.*

4.4.    Because Plaintiff and Defendant have an ongoing, unresolved dispute as to the cause of the damages not yet paid for by Plaintiff, they are not in a position to submit the damages to the appraisers. Any appraisal would necessarily include a coverage decision based on the appraisers' unauthorized determination that wind and/or hail caused the disputed damages. Therefore, any appraisal award, under these circumstances, would be made without authority and/or not in substantial compliance with the terms of the Policy, and the award would not be binding and enforceable. *See id.; Providence Lloyds Ins. Co. v. Crystal City Ind. Sch. Dist.,* 877 S.W.2d at 875

(providing the situations for disregarding an appraisal award, including when award is made without authority, made as the result of fraud, accident or mistake, or not in substantial compliance with the terms of the insurance contract).

4.5.    Plaintiff, therefore, requests that the Court's declaration that the Policy authorizes the appraisers to appraise the value of the property at the time of loss and the amount of loss submitted to them and that the appraisers are not authorized to determine what caused or did not cause the damages.  Plaintiff further asks the Court to order that, pursuant to the clear language of the Policy, Plaintiff has not waived any rights by any act relating to the appraisal and is not required to proceed with an appraisal before causation and the scope of the covered loss is agreed upon or determined. Plaintiff also seeks a declaration under the Policy as to the proper amount owed to Defendant.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Court enter an order providing the above-requested relief and all other relief to which the Plaintiff is justly entitled under the law and in equity.

Respectfully submitted,

**LINDOW & TREAT, L.L.P.**

By:_____
David L. Treat
Texas Bar No. 20205300
112 East Pecan Street - Suite 2300
San Antonio, Texas 78205
210-227-2200 [Telephone]
210-227-4602 [Telecopier]
Counsel for Plaintiff

05/30/2003  09:53    956-423-5650    KLEMENT AGENCY    PAGE  03/03



**AXA CORPORATE SOLUTIONS LLOYDS
INSURANCE COMPANY OF TEX...
17 STATE ST, NEW YORK, NY 10004**

ICAT NPCP 50(d) (11 01)
02/28/2003

ICAT  42-6550002388-C-01

### Page 1 of 3
### NAMED PERIL COMMERCIAL PROPERTY POLICY
### DECLARATIONS PAGE AND SCHEDULE A



| From: | 02/28/2003 | 12:01 am Standard Time* | | |
|---|---|---|---|---|
| To: | 02/28/2004 | 12:01 am Standard Time* | 12 months | 02/28/2003 |

\* At the Named Insured Mailing Address shown below.

| **PRODUCER** | 5500545 | (281) 249-4900 | **NAMED INSURED** |
|---|---|---|---|

US RISK INSURANCE GROUP
11200 RICHMOND
SUITE 600
HOUSTON, TX 77082

TEX-MEX COLD STORAGE, INC,
P. O. BOX 4080
BROWNSVILLE, TX 78520

**This Policy is comprised of the following Forms and Endorsements:**

| ICAT NPCP 50(d) (11 01) | ICAT NPCP 50(d) SA (11 01) | ICAT NPCP 50 Notice (10 01) | ICAT NPCP 55 Lloyds (10 01) | ICAT NPCP 100 (01 02) |
|---|---|---|---|---|
| ICAT NPCP 204 (10 01) | ICAT NPCP 207 (10 01) | ICAT NPCP 300 (10 01) | ICAT NPCP 500(b) (10 01) | ICAT NPCP 403 (10 01) |
| ICAT NPCP 500 (10 01) | ICAT NPCP 500 TX-A1 (01 00) | *BI/EE  1,000,000* | | |

*BLDG  5,200,000    DED - 10,000*

### COMMON POLICY CONDITIONS

In return for the payment of the premium and fees, and subject to all the terms of this Policy, We agree with You to provide the insurance as stated in this Policy.

**See Schedule A attached to this Declarations Page for Coverages, Deductibles and Limits of Insurance.**
**TO FILE A CLAIM 24 HOURS/DAY, PLEASE FAX TO 1-877-541-4084 OR CALL 1-877-568-4228.**

Your Annual Premium and Fees are:

| | | |
|---|---|---|
| Annual Premium | $ | 12,968.00 |
| Inspection Fee | $ | 0.00 |
| Policy Fee | $ | 150.00 |
| Total | $ | 13,118.00 |
| All Wind and Hail Deductible | $ | 10,000 per occurrence |
| All Other Causes of Loss Deductible | $ | 25,000 per occurrence |

## This policy is only intended to provide coverage that is supplemental to coverage provided by a comprehensive property policy.

THIS DECLARATIONS PAGE AND SCHEDULE A ATTACHED HERETO, TOGETHER WITH THE
NAMED PERIL COMMERCIAL PROPERTY POLICY FORM (ICAT NPCP 100 (01 02)) AND ENDORSEMENTS,
IF ANY, ATTACHED HERETO, COMPLETE THIS CONTRACT OF INSURANCE.

ICAT of Texas, Inc. (ICAT) is a licensed agent authorized to conduct business in the state of Texas.
This policy has been issued by ICAT, representing AXA Corporate Solutions Lloyds Insurance Company of Texas
in accordance with authorization granted to ICAT by AXA Corporate Solutions Lloyds Insurance Company of Texas.

| Authorized Signature | Boulder, CO | 02/28/2003 |
|---|---|---|
| | Countersigned at | Countersignature Date |
| | Insured | |

PLAINTIFF'S
EXHIBIT
A

# AXA RE AMERICA INSURANCE COMPANY

## DIFFERENCE IN CONDITIONS COVERAGE FORM

### Part I - General Provisions

**Article I**        **Insuring Agreement**

A. This Policy insures against all risks of direct physical loss or damage to Covered Property from any external cause, except as hereinafter excluded, while the property is located at a Covered Location.

B. All losses will be adjusted and settled as though insurance coverage at least equivalent to an ISO Building and Personal Property Form (CP 00 10) with a Special Form Cause of Loss (CP 10 30) is in force at all times that this Policy is in force, or it is so deemed in the event that such coverage is not in force.

**Article II**        **Policy Effective Date**

This Policy covers loss or damage to Covered Property from all Causes of Loss covered herein arising out of losses occurring during the Policy Period shown in the Declarations Page.

**Article III**        **Cancellation Provisions**

See the "State Specific" Endorsement Form 600 that is attached to this Policy.

**Article IV**        **Property or Interest Covered**

This Policy covers only the property or interests (hereinafter collectively or individually referred to as Covered Property) described in this Article IV and only to the extent that such property or interests are shown as covered in the Declarations Page, Schedule A, and except as hereinafter excluded.

**Coverage A**:        **Building(s) and/or Structure(s)**, including additions and extensions permanently attached to the building(s) or structure(s); and all property belonging to and constituting a permanent part of said building(s) and/or

structure(s) and pertaining to the service, upkeep, maintenance and operation thereof.

**Coverage B:** **Business Personal Property** defined as Stock (as defined herein); materials and supplies usual or incidental to the Operations of the Named Insured and like property of others in the Named Insured's care, custody or control and for which the Named Insured is legally liable; furniture, fixtures, equipment and machinery that are the property of the Named Insured, and like property of others in the care, custody or control of the Named Insured and for which the Named Insured is legally liable. Business Personal Property is covered only so long as it is located at a Covered Location.

**Coverage C:** The Named Insured's interest in **Tenant Improvements and Betterments** made at the expense of the Named Insured and including fixtures, alterations, installations, or additions comprising part of a building(s) but only when such building is occupied but not owned by the Named Insured.

**Coverage D:** **Additional Property Coverage** defined as property (which is not a permanent part of a building or structure covered under Coverage A of this Article IV) that is located at a Covered Location and is specifically identified in the Declarations Page, Schedule A, Additional Property Coverage.

**Coverage E:** **Loss of Business Income; Rental Value; Extra Expense** as provided in Endorsement Form ICAT DIC 300.

**Coverage F:** **Ordinance or Law Coverage** as provided in Endorsement Form ICAT DIC 302.

**Article V**        **Coverage Extensions**

A. **Debris Removal**

1. This Policy covers expenses incurred in the removal of debris when the debris is directly caused by a covered Cause of Loss. These expenses will be paid only if they are reported to Us within 180 days of the date the covered Cause of Loss occurred.

2. The most that We will pay under this coverage extension for debris removal is 25% of the amount We actually pay for the direct physical loss or damage to Covered Property under Coverage Sections A, B, C and D, as applicable, defined in Article IV. Payments We make under this debris removal coverage extension are included in and part of the Limit of Insurance of Coverage Sections A, B, C, and D. This coverage extension does not increase the Limit of Insurance shown in the Declarations Page, Schedule A.

3. Notwithstanding the foregoing, in the event that the sum of direct physical loss or damage under Coverage Sections A, B, C and D plus the cost of debris removal exceeds the sum of the Limit of Insurance under Coverage Sections A, B, C and D, then We will pay up to an additional $10,000 for debris removal at each Covered Location in any one occurrence, but in no event shall Our coverage for debris removal exceed an amount equal to 25% of what We actually pay for direct physical loss or damage under Coverage Sections A, B, C and D.

4. This coverage extension for debris removal does not cover the loss, damage or expense to:

   a. Extract Pollutants from land or water;

   b. Remove, restore or replace polluted land or water;

   c. Test for, monitor, clean up, remove, restore, replace, contain, treat, detoxify or neutralize, or in any way respond to or access the effects of Pollutants;

d.  Investigate or defend any loss, injury, or damage, or for any costs, fine, or penalty or for any expense or claim or suit related to any of the above.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

B.  Preservation of Property

If it is necessary to move Covered Property from a Covered Location to preserve it from loss or damage from a covered Cause of Loss under this Policy, then We will pay for any direct physical loss or damage to that Covered Property from a covered Cause of Loss under this Policy while it is being moved or while temporarily stored at another location, but only if the loss or damage to the Covered Property occurs within 30 days after the Covered Property is first moved.  This coverage extension does not increase Our Limit of Insurance for Covered Property as shown in the Declarations Page, Schedule A.

**Article VI**          **Covered Location**

A Covered Location is defined to mean the premises at the address of a building or structure insured hereunder, or the premises at the address of a building or structure housing Business Personal Property insured hereunder, as shown in the Declarations Page, Schedule A.

**Article VII**         **Limit of Insurance**

A.  Our Limit of Insurance shall not exceed the Limit of Insurance shown in the Declarations Page, Schedule A.

B.  If two or more Causes of Loss covered by this Policy contribute to loss or damage to Covered Property in the same Occurrence, We will pay no more than the lesser of (i) the actual amount of the loss or damage to the Covered Property, or (ii) Our Limit of Insurance for the Covered Property as shown in the Declarations Page, Schedule A.

**Article VIII**        **Valuation**

SPECIMEN COPY

We shall not pay more than the Actual Cash Value of the Covered Property at the time of loss or damage from a covered Cause of Loss. The loss or damage shall be ascertained according to such Actual Cash Value. Actual Cash Value will be determined based on the replacement cost of the property less depreciation (however caused), but in no event shall such amount exceed what it would then cost to repair or replace the Covered Property with material of like kind and quality at the same location, nor the amount for which the Named Insured may be liable.

**Article IX**      **Deductible**

See the Deductible Endorsement Form that is attached to this Policy.

**Article X**      **Property and Interests Excluded**

Unless specifically added by Endorsement, or included as Covered Property under Coverage D of Article IV and specifically listed in the Declarations Page, Schedule A, the following property and interests are not Covered Property and are excluded from coverage under this Policy:

1.  Accounts, bills, currency, deeds, food stamps, money, notes or other evidences of debt, securities, stamps, original drawings and specifications, letters of credit, passports, tickets (including lottery tickets), manuscripts, bullion, gift certificates and valuable papers.

2.  Fine arts, jewelry, precious stones, antiques and furs.

3.  Animals, birds and fish (unless owned by others and boarded by You, or if owned by You, only as Stock while inside of buildings), growing plants, trees or shrubs (except when held for sale, or when used for decorative purposes inside buildings), and growing crops or lawns.

4.  Motor vehicles licensed or designed principally for road or highway use, motorcycles, motor scooters and other similar vehicles licensed or designed principally for road or highway use.

5.  Watercraft and aircraft.

6.  Mobile homes and manufactured homes.

7.    Trailers designed to haul or transport goods, materials, vehicles and any other substance or product.

8.    Property sold by You under conditional sales, trust agreements, installment payments or other deferred payment plans after delivery to customers.

9.    Property in transit, except as provided in Article V, Paragraph B, and railroad rolling stock.

10.   Steam boilers, steam pipes, steam turbines, steam engines, or pressure or vacuum vessels, all whether owned, leased or operated by You, if loss is caused by bursting, bulging, rupture, melting, burning, cracking, implosion or explosion of such objects, or an internal cause which makes necessary repair or replacement of the object or part.

11.   Machines or machinery if loss is caused by rupture, bursting or disintegration, or by centrifugal, centripetal, or reciprocating force.

12.   Machinery and equipment in the open, including gas pumps.

13.   Contractors' equipment, including trailers used to transport such equipment.

14.   Electronic data processing systems, their equipment and component parts, including computers, electronic accounting machines, all supporting machinery, magnetic tapes, discs, cards, and any storage device, and electronic data processing media including data, records, all software including procedures and programs or source material of any kind, and all forms of converted data or programs and/or instruction vehicles used in Your data processing operations.

15.   Buildings or structures in the course of construction, including materials and supplies, except alterations and repairs on or within the existing walls of existing buildings or structures insured by this Policy.

16.   Power transmission and/or feeder lines.

17.   Land (including but not limited to land on which the

Covered Property is located), or water, howsoever and wherever located, or any interest or right therein.

18. Contraband, or property in the course of illegal transportation or trade.

19. The cost to research, replace or restore any and all information pertaining to valuable papers and records, including but not limited to valuable papers and records which exist on electronic, digital or magnetic media.



20. Grain, hay, straw or other crops while outside of buildings.

21. Fences, including property line walls, latticework and trellises.

22. Radio or television antennas and satellite dishes, including their lead-in wiring, masts or towers, all while outside of buildings.

23. Bridges, dams, tunnels, roadways, walks, walkways, patios or other paved surfaces.

24. The cost of excavations, grading, backfilling or filling.

25. Foundations of buildings, structures, machinery or boilers if their foundations are below:

a. The lowest basement floor; or

b. The surface of the ground, if there is no basement.

26. Bulkheads, seawalls, pilings, piers, wharves or docks that are not a part of a covered foundation of a building and/or structure covered under Coverage A of Article IV.

27. Retaining walls.

28. Underground pipes, pipelines, flues or drains.

29. Pools (whether in the ground or above the ground) including spas, hot tubs and jacuzzis located outdoors, ponds, lakes, waterfalls or fountains.

30. Signs (attached and not attached to a building) unless

held for sale and Coverage B of Article IV is applicable to such signs.

31. Awnings and canopies, whether attached or not attached to a building or structure, and including awnings and canopies over gas pumps.



32. Light poles and street signs.

33. Boardwalks, catwalks, trestles and bridges.

34. Greenhouses, shade houses, hot houses and glass houses.

35. Other buildings and structures at a Covered Location not specifically described and included as Covered Property in the Declarations Page, Schedule A.

**Article XI**          **Excluded Causes of Loss**

This Policy does not insure against loss, expense, damage, demand or suit arising out of, caused by or resulting from any Cause of Loss listed in this Article XI, unless specifically added by Endorsement. Furthermore, loss, expense and damage the result of an excluded Cause of Loss are excluded from coverage herein whether a covered Cause of Loss that is covered by this Policy contributes concurrently or in any sequence to any loss, expense or damage.

1. Any Cause of Loss insured under other insurance policies carried by or for the benefit of the Named Insured pertaining to Covered Property hereunder, including those Causes of Loss covered under an ISO Building and Personal Property Form (CP 00 10) with a Special Form Cause of Loss (CP 10 30), whether such coverage is in force or not.

2. Fire, lightning, explosion or smoke.

3. Weather, including but not limited to wind, hail, wind driven rain, rain, sleet, snow, ice, sand or dust, tornado, waves, wave wash, and wave action.

4. Loss or damage caused by or resulting from freezing.

5. Earth movement, including but not limited to loss,

damage or expense caused by, resulting from, contributing to or aggravated by Earthquake, landslide, mudslide, mudflow, rockslide, earth sinking, rising, shifting or settling and any resulting need for land stabilization, but not including Subsidence or Sinkhole Collapse.

Earthquake means a vibration-generating rupture event caused by displacement within the earth's crust through release of strain associated with tectonic processes and includes effects such as ground shaking, liquefaction, seismically-induced land sliding, and damaging amplification of ground motion. Earthquake does not mean or include tsunami or volcanic eruption.

Tectonic processes means adjustments of the earth's crust in response to regional stress conditions initiated by dynamic forces within the earth's interior.

Subsidence or Sinkhole Collapse means the sinking or collapse of land.

6.  Tsunami.

7.  Volcanic action including eruption, explosion, or effusion of any volcano and any and all secondary effects of such eruption, explosion or effusion, inclusive of damage caused by volcanic ash, and the shaking and ground motion associated with volcanic action.

8.  Subsidence or Sinkhole Collapse. Subsidence or Sinkhole Collapse means the sinking or collapse of land.

9.  Loss, damage or expense caused by aircraft, watercraft or vehicles.

10.  Extended Coverage Causes of Loss as described in a standard Extended Coverage Endorsement attached to a standard fire insurance policy.

11.  Vandalism and malicious mischief.

12.  Sprinkler leakage; and water, other liquids, powder or other material that leaks or flows from fire protection systems or other equipment, including damage from leaking fire protective sprinklers.

13.  Theft, robbery, pilferage, burglary, looting, larceny,

SPECIMEN COPY

mysterious disappearance, inventory shortages or
attempted theft, robbery, pilferage, burglary, or larceny.

14. Mere disappearance of property or loss or shortage of
property disclosed on taking inventory.

15. Flood, which is defined to include:

Waves, storm surge, tide or tidal water, and the rising
(including the overflow or breaking of boundaries) of
lakes, ponds, reservoirs, rivers, harbors, streams and
other similar bodies of water or surface waters, rain
accumulation or run off, or by spray from any of the
foregoing, whether driven by wind or not, and including:

   a. The backing up of sewers or drains;

   b. Water below the surface of the ground including that
      which exerts pressure on or flows, seeps, or leaks
      through sidewalks, driveways, foundations, walls,
      basement or other floors, or through doors, windows
      or any other opening in such driveways, sidewalks,
      foundations, walls, or floors.

16. Water, liquid or any other substance that backs up or
overflows from a sewer, sump or drain.

17. Sudden, continuous or repeated seepage or leakage of
water, liquid or other substance.

18. Riot, civil commotion, insurrection, rebellion, revolution,
civil war, usurped power or action taken by governmental
authority in hindering, combating or defending against
any such occurrence, seizure or destruction under
quarantine or customs regulation, confiscation by order
of any government or public authority, or risks of
contraband or illegal transportation or trade.

SPECIMEN COPY

**ICAT DIC 100 (10 01)**

19. Water below the surface of the ground, including that which exerts pressure on or flows, seeps, or leaks through sidewalks, driveways, foundations, walls, floors or paved surfaces, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls, floors or paved surfaces.

20. Wear and tear, depreciation, mechanical breakdown, derangement, inherent vice, latent defect, deterioration, smog, moth, vermin, rodents, termites or other insects including larvae or pupae thereof.

21. Smoke, vapor or gas from agricultural smudging, or industrial operations.

22. Dampness of atmosphere, dryness of atmosphere, changes in or extremes of temperature, shrinkage, evaporation, loss of weight, rust or corrosion, exposure to light, contamination, fungus, mold, mildew, wet rot, dry rot, deterioration, decay, hidden or latent defect, change in flavor or color or texture or finish, whether loss or damage from such excluded Causes of Loss is direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by a Cause of Loss covered under this Policy.

23. Leakage of contents.

24. Breakage of glass or similar fragile materials, marring or scratching. However, damage to Covered Property which is the result of the breaking of glass is covered hereunder but only when such breakage of glass is the direct result of a Cause of Loss covered hereunder.

25. Dishonest, negligent, intentional or criminal acts or omissions by any Named Insured, partner, employee (including leased or temporary employees), director, trustee, authorized representative, or anyone to whom a Named Insured entrusts property for any purpose who is:

   a. Acting alone or in collusion with others; and

   b. Whether or not occurring during the hours of employment.

26. Any fraudulent scheme, trick, device or false pretense

practiced upon the Named Insured or upon any person(s) to whom the property may be entrusted.

27. Electrical injury or disturbance to electrical appliances, fixtures or wiring caused by electrical currents artificially or otherwise generated.

28. Settling, cracking, shrinking or expansion in foundations, walls, floors, or ceilings.

29. The negligent act or omission of any person.

30. Enforcement of any ordinance or law regulating the reconstruction, use or repair of any Covered Property or requiring the demolition or tearing down of any property, including the cost of enforcement of any ordinance or law regulating the removal of debris.

31. Hostile or warlike action, including but not limited to acts of terrorism, in time of peace or war by any individual, group, government or sovereign power (de jure or de facto), including action in hindering, combating or defending against an actual, impending or expected attack:

    a. By any individual, group, government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or

    b. By military, naval or air forces; or

    c. By any agent of any such government, power, authority or forces; or

    d. Any weapon of war employing atomic fission or radioactive force whether in time of peace or war.

32. Nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by a Cause of Loss covered under this Policy.

33. Loss or damage caused by or resulting from delay, loss of market, loss of use, interruption of business, bankruptcy or consequential loss of any nature.

ICAT DIC 100 (10 01)

34. Acts or decisions, including the failure to act or decide, of any person, group, organization, entity or governmental body.

35. Faulty, inadequate or defective:

    a. Planning, zoning, development, surveying, siting;

    b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    c. Materials used in repair, construction, renovation, or remodeling;

    d. Maintenance of part or all of any property on or off the Covered Location.

36. The failure of power or other utility service however caused and wherever such failure should occur.

37. Obsolescence or depreciation.

38. Mechanical breakdown or failure of property or Covered Property, including faulty construction or changes in the arrangement of machine parts.

39. Error in design, faulty materials, or workmanship in the development, manufacture, or installation of equipment.

40. Short circuit, blow out, power surge, or other electrical disturbance within electrical equipment.

41. Electrical or magnetic injury, disturbance, or erasure of electronic recordings.

42. Programming errors or incorrectly instructing a machine.

43. Actual work upon Covered Property, including repairing, adjusting, servicing, or maintenance operations.

44. The mere existence, occurrence, discharge, dispersal, seepage, migration, release, escape, or use of Pollutants. This includes, but is not limited to, loss, damage or expense to:

    a. Extract Pollutants from land or water;

b. Remove, restore or replace polluted land or water;

c. Test for, monitor, clean up, remove, restore, replace, contain, treat, detoxify or neutralize, or in any way respond to or access the effects of Pollutants;

d. Investigate or defend any loss, injury, or damage, or for any costs, fine, or penalty or for any expense or claim or suit related to any of the above.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

45. Any loss, damage or expense, or increase in loss, damage or expense caused by or resulting from:

a. The removal, encapsulation, covering, or any manner of control or abatement from any goods, products, or structure of asbestos, dioxin, or polychlorinated biphenyls;

b. The demolition, increased cost of construction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos, dioxins, or polychlorinated biphenyls;

c. Any governmental direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the Named Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified;

d. The presence of asbestos in any building or structure whether covered or not covered by this Policy.

46. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or appliances.

47. Any loss, damage or expense, or increase in loss, damage or expense caused by or resulting from ventilation, heating, air conditioning, or sick building condition(s). Sick building condition(s) as used herein is

understood to mean a building(s) or structure(s) with actual or alleged conditions which create or may create an environment which is, or is suspected to be, unhealthy in any way to any person or other living thing.

48. Collapse, impending collapse and any impairment or alleged impairment of structural integrity.

49. Erosion, however caused.

**Article XII**          **Other Insurance**

In the event the Named Insured has other insurance (meaning insurance in the name of the Named Insured, including insurance not written upon the identical terms, conditions, and provisions contained in this Policy) protecting Covered Property hereunder against the same Cause of Loss covered by this Policy, and such other insurance is in force at the time of any loss hereunder, then the provisions of this insurance shall not apply unless and until the liability of the other insurance has been fully exhausted, and then only to the extent the Named Insured has not been fully indemnified by such other insurance. The provisions of this Article do not increase Our Limit of Insurance in this Policy.

**Article XIII**          **Records and Inventory; Examination of Records**

The Named Insured shall keep accurate books, records and accounts in the following manner:

A. A detailed and itemized inventory record of all Covered Property hereunder shall be maintained and physical inventory shall be taken periodically at intervals not more than twelve (12) months apart.

B. The Named Insured shall, as often as may be reasonably required during the term of this Policy and for one (1) year thereafter, produce for examination by Us or Our duly authorized representative all the books and records, inventories and accounts relating to Covered Property hereunder.

**Article XIV**     **Concealment, Misrepresentation and Fraud**

This entire Policy shall be void if, whether before or after a loss, You have concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or Your interest therein, or in case of any fraud or false swearing by You relating thereto.

SPECIMEN COPY

## Part II - Loss Provisions

**Article XV**     **Notice of Loss**

You shall, as soon as practicable, report in writing to Us or Our representative every loss, damage or occurrence which may give rise to a claim under this Policy and shall also file with Us or Our representative a signed, detailed and sworn proof of loss within 60 days after Our request for such sworn proof of loss. We will provide You with the necessary forms.

**Article XVI**     **Responsibility of Named Insured; Protection of Property**

A. You shall take all reasonable steps to protect Covered Property from further damage following loss or damage to Covered Property. Notwithstanding the foregoing, We will not pay for any subsequent loss, damage or expense to such Covered Property the result of a Cause of Loss not covered under this Policy.

B. You shall keep a record of expenses incurred to protect the Covered Property following loss for consideration in the settlement of the claim.

C. If feasible, You shall set the damaged property aside and in the best possible order for examination.

D. The provisions of this Article do not increase Our Limit of Insurance in this Policy.

**Article XVII**     **Assistance and Cooperation of the Named Insured**

You shall cooperate with Us in the investigation or settlement of any claim. Furthermore, in the event this Policy covers Your liability, You shall cooperate with Us and, upon Our request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence and obtaining the

attendance of witnesses and in the conduct of suits. You shall not voluntarily make payment, assume any obligation or incur any expense without Our written consent.

**Article XVIII**          **Abandonment**

There can be no abandonment of any property to Us.

**Article XIX**          **Suit**

No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless:

A. You are in full compliance with all of the terms of this Policy; and

B. The same be commenced within twelve (12) months after the occurrence which gives rise to the claim provided, however, that if by the laws of the state within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state.

**Article XX**          **Claims Against Third Parties**

In the event of any loss, damage or expense to Covered Property hereunder, You shall, as soon as practically possible, make claim in writing against the carrier(s), bailee(s) or other third party who may be responsible, in whole or in part, for the loss, damage or expense or for any increase in loss, damage, or expense.

**Article XXI**          **Subrogation Waiver**

This insurance shall not be prejudiced by agreement made by You releasing or waiving Your right to recovery against third parties responsible for loss, damage or expense to Covered Property, except under the following conditions:

A. Whether made before or after loss has occurred, such agreement must be in writing and must release or waive Your entire right of recovery against such third party.

B. If made before loss has occurred, such written agreement may run in favor of any third party.

C. If made after loss has occurred, such written agreement may run only in favor of a third party falling within one of the following categories at the time of loss:

   1.   A third-party Named Insured under this Policy; or

   2.   A business firm which:

      a.  Is owned or controlled by You or in which You own capital stock or other proprietary interest; or

      b.  Owns or controls You or owns or controls capital stock or other proprietary interest in the Named Insured.

**Article XXII**     **Examination Under Oath**

A. You shall, as often as may be reasonably required, exhibit to any person designated by Us all that remains of any Covered Property and shall submit, and insofar as is within Your power cause Your employees and others to submit, to examinations under oath by any person named by Us. Furthermore, as often as may be reasonably required, You shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by Us or Our representative, and shall permit extracts and copies thereof to be made.

B. No such examinations under oath or examination of books or documents, nor any other act by Us or any of Our employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which We might otherwise have with respect to any loss or claim; all such examinations and acts shall be deemed to have been made or done without prejudice to Our liability.

**Article XXIII**     **Privilege To Adjust With Owner**

In the event of loss or damage to property of others held by You for which claim is made under this insurance, the right to adjust and settle such loss or damage with the owner or owners of the damaged property is reserved to the Company and the receipt of payment made by Us in settlement of such claim by the owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the Named Insured. If legal

proceedings are taken to enforce a claim against You as respects any such loss or damage, We reserve the right, at Our option and without expense to You, to conduct and control the defense on behalf of and in the name of the Named Insured. No action of the Company in such regard shall increase Our liability under this Policy, nor increase the Limit of Insurance specified in the Declarations Page, Schedule A.

**Article XXIV**     **Pair, Set Or Parts**

A. In event of loss or damage to any part of Covered Property consisting, when complete for use or sale, of several parts, We shall only be liable for the value of the part lost or damaged.

B. Notwithstanding the foregoing, for any article or articles which are a part of a pair or set, the measure of loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss, damage or expense be construed to mean total loss of the pair or set.

**Article XXV**     **Labels**

In the event of loss or damage to labels, capsules or wrappers insured hereunder, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules or wrappers.

**Article XXVI**     **Appraisal**

If You and We fail to agree as to the value of the property or amount of loss, damage or expense, each shall, on the written demand of either, select a competent and impartial appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and impartial umpire, and failing for fifteen (15) days to agree upon such umpire, then, on the request of the Named Insured or the Company, such shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the value at the time of loss and the amount of loss, and failing to agree, shall submit their differences to the umpire. A decision agreed to by any two shall determine the amount of loss and

shall be binding. You and We shall each pay our chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. We shall not be held to have waived any of Our rights by any act relating to appraisal.

**Article XXVII**    **Company's Options**

A.  In the event of loss or damage to Covered Property under this Policy, at Our option, We will either:



1.  Pay the value of the damaged Covered Property; or

2.  Pay the cost of repairing, rebuilding or replacing with other property of like kind and quality the damaged Covered Property, subject to Paragraph B of this Article; or

3.  Take all or any part of the Covered Property at an agreed or appraised value; or

4.  Repair, rebuild or replace the Covered Property with other property of like kind and quality, subject to Paragraph B of this Article.

B.  The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

C.  We will give You notice of Our intentions within 60 days after we receive Your sworn proof of loss.

D.  We will not pay You more than Your financial interest in the Covered Property.

**Article XXVIII**     **Salvage and Recoveries**

All salvage, recoveries and payments recovered or received subsequent to the loss settlement under this Policy shall be applied as if recovered or received prior to said settlement and all necessary adjustments shall be made by the parties hereto.

**Article XXIX**     **Settlement of Loss**

We will pay for covered loss or damage within 60 days after We receive Your signed sworn proof of loss and You have complied with all of the terms of this Policy, and:

A. We have reached agreement with You on the amount of loss; or

B. An appraisal award has been made.

**Article XXX**     **No Benefit To Others**

This insurance shall in no way inure directly or indirectly to the benefit of any carrier, bailee or any other person or entity.

## Part III - Other Provisions

**Article XXXI**     **Inspection of Property and Operations**

We and any person or organization making inspections on Our behalf shall be permitted, but not obligated, to inspect Your property and operations at any time before or after loss. Neither the right of the Company and any person or organization to make such inspection, nor the making thereof, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or comply with any laws, rules or regulations, nor does such inspection constitute a guarantee of an accurate or complete valuation of such Covered Property.

**Article XXXII**     **Premiums and Fees**

The first Named Insured shown in the Declarations Page is responsible for the payment of all premiums and fees due hereunder.  Return premiums or fees due shall be paid to the first Named Insured, unless otherwise required by law.

**Article XXXIII**    **Mortgagee**

A. If an Additional Interest is listed as a Mortgagee in the Declarations Page, then the provisions of this Article XXXIII shall apply to such Additional Interest.

B. The term Mortgagee includes trustee.

C. We will pay for covered loss of or damage to buildings or structures to each Mortgagee shown in the Declarations Page in their order of financial precedence.

D. The Mortgagee has the right to receive loss payment even if the Mortgagee has started foreclosure or similar action on the building or structure.

E. If We deny Your claim because of Your acts or because You have failed to comply with the terms of this Policy, the Mortgagee will still have the right to receive loss payment if the Mortgagee:

　　1. Pays any premium due under this Policy at Our request if You have failed to pay any premium due under this Policy; and

　　2. Submits a signed, sworn statement of loss within 60 days after receiving notice from Us of Your failure to submit a signed sworn statement of loss; and

　　3. Has notified Us of any change in ownership, occupancy or substantial change in risk known to the Mortgagee.

All of the terms and conditions of this Policy will then apply directly to the Mortgagee.

F. If We pay the Mortgagee for any loss or damage and deny payment to You because of Your acts or because You have failed to comply with the terms of this Policy:

　　1. The Mortgagee's rights under the mortgage will be transferred to Us to the extent of the amount We pay; and

2. The Mortgagee's right to recover the full amount of the Mortgagee's claim will not be impaired.

At Our option, We may pay to the Mortgagee the whole principal on the mortgage plus any accrued interest. In this event, Your mortgage and note will be transferred to Us and You will pay Your remaining mortgage debt to Us.

G. If We cancel this Policy, We will give written notice to the Mortgagee at least:

1. 10 days before the effective date of cancellation if We cancel for Your nonpayment of premium; or

2. 30 days before the effective date of cancellation if We cancel for any other reason.

H. If We elect not to renew this Policy, We will give written notice to the Mortgagee at least 10 days before the expiration date of this Policy.

**Article XXXIV**   **Definitions**

When the following words appear in this Policy or any other forms or Endorsements attached hereto, they mean:

1. "Us," "We", "Our" and "the Company" mean AXA RE America Insurance Company.

2. "You", "Your" and "the Named Insured" mean the Named Insured(s) identified in the Declarations Page.

3. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

4. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

5. "Policy" means form ICAT DIC 100 and the Declarations Page, including Schedule A, and all Endorsements and other forms attached thereto.  See the Declarations Page for a listing of Endorsements included with this Policy.

6. Covered Property is as defined in Article IV and as specifically listed in the Declarations Page, Schedule A.

7. Covered Location is as defined in Article VI.

8. Limit of Insurance is as defined in Article VII.

9. Operations means Your business activities occurring at the Covered Location.

10. Occurrence means any one disaster, accident or loss or series of disasters, accidents or losses which are covered Causes of Loss, are one event and occur within the area of one state of the United States and states contiguous thereto (however, as regards Earthquake, the epicenter does not need to be within these territorial confines). The duration and extent of an Occurrence is limited to all loss or damage sustained by Covered Property occurring during any period of 168 consecutive hours directly caused by the same event, except that the term Occurrence as regards loss or damage from wind and hail shall mean all loss sustained by Covered Property occurring during any period of 72 consecutive hours directly caused by the same event and such event need not be limited to one state or states contiguous thereto.

**Article XXXV**     **Forms and Endorsements; Changes**

A. Forms and Endorsements: In addition to this form, ICAT DIC 100, there are Endorsements and a Declarations Page (including Schedule A) applicable to this Policy. These forms and all Endorsements comprise this Policy. See the Declarations Page for a listing of Endorsements.

B. Changes: This Policy contains all of the agreements between the Named Insured and the Company concerning the insurance coverage provided hereunder. The Named Insured shown in the Declarations Page is authorized to make changes in the terms of this Policy with the Company's consent. This Policy's terms can be amended or waived only by Endorsement issued by the Company and made a part of this Policy.

# AXA CORPORATE SOLUTIONS LLOYDS INSURANCE COMPANY OF TEXAS

## WIND AND HAIL CAUSE OF LOSS
## COVERAGE ENDORSEMENT FORM 204

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

I.    This Policy provides coverage for loss or damage directly caused by wind and hail.

II.   Notwithstanding the foregoing, coverage provided by this Endorsement does not include loss, damage or expense to the interior or exterior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand, or dust, whether driven by wind or otherwise, unless the building or structure first sustains wind or hail damage to its roof, walls, doors, or windows, through which the rain, snow, sand, or dust enters.

All other terms and conditions of this Policy remain.

# AXA CORPORATE SOLUTIONS LLOYDS INSURANCE COMPANY OF TEXAS

## COVERAGE EXTENSION POLLUTANT CLEAN UP AND REMOVAL ENDORSEMENT FORM 207

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

**Article V** of this Policy is amended and expanded to provide an additional Coverage Extension for **Pollutant Clean Up and Removal**, as follows:

D. **Pollutant Clean Up and Removal**

1. We will pay Your expense to extract Pollutants from land or water premises if the discharge, dispersal, seepage, migration, release or escape of the Pollutants is caused by or results from a covered Cause of Loss that occurs during the Policy Period. These expenses will be paid only if they are reported to Us in writing within 180 days of the date on which the covered Cause of Loss occurred.

2. This Coverage Extension does not apply to costs to test for, monitor or assess the existence, concentration or effects of Pollutants. But we will pay for testing which is performed in the course of extracting the Pollutants from land or water at a Covered Location.

3. The most We will pay under this Coverage Extension for each Covered Location is $10,000 for the sum of all covered expenses arising out of a covered Cause of Loss occurring during each separate 12 month period of this Policy.

4. Our Limit of Insurance for this Pollutant Clean Up and Removal Coverage Extension is in addition to Our Limit of Insurance defined in the Declarations Page, Schedule A.

All other terms and conditions of this Policy remain.

## AGREEMENT FOR SUBMISSION TO APPRAISERS (HOMEOWNERS)

It is hereby agreed, by and between ___Tex Mex Cold Storage___ and

___AXA Corporate Solutions Lloyds___ that a disagreement exists as to the actual cash value, the

amount of loss, or the cost or repair or replacement as a result of a ___Wind/Hail___ loss on ___4/8/03___
                                                                          (Peril)              (Month, Day, Year)
to the insured item(s): ___Roof___

located at ___665 East 14th Street, Brownsville, TX 78520___ and insured by Policy

Number _____, effective _____ to _____
                (Address of Insured Dwelling)

___Tex Mex Cold Storage___                    ___AXA Corporate Solutions Lloyds___
          (Insured)                                     (Insurance Company)

Appraisal if, under section 1, the Insured and the Company shall fail to agree as to the actual cash value, the amount of loss or the cost of repair or replacement, then on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. Such appraiser shall first select a competent and disinterested umpire; and failing for 15 days to agree on such umpire, then, on request of the insured or the Company, such umpire shall be selected by a judge of a district court of a judicial district where the loss occurred. Such appraisers shall then appraise the loss, stating separately actual cash value and loss to each item, and if the Insured or the Company requests that they do so, the appraisers shall also appraise (a) the full replacement cost of the described dwelling, (b) the full replacement cost of any building upon which loss is claimed, and (c) the full cost of repair or replacement of loss (without deduction for depreciation) to such building and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two when filed with the Company, shall determine to the extent so itemized the amount of actual cash value and loss, the full replacement cost, and the cost of repair or replacement. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. Such award shall be binding as between the Insured and the Company.

The insured hereby selects ___Tom Brawner___          ___(210) 912-0314___
                                      (Name)                    (Phone)
___P. O. Box 17094, San Antonio, TX 78217___
                                                         (Address)
as his competent and disinterested appraiser.

The Insurance Company hereby selects ___Darren W. Gerloff___     ___(210) 490-2777___
                                              (Name)                   (Phone)
___14955 Bulverde Road, San Antonio, TX 78247___
                                              (Address)
as its competent and disinterested appraiser.

### DUTIES OF APPRAISERS

1. Appraisers shall first select a competent and disinterested umpire. If they fail to agree within 15 days, they shall notify both parties so the policy provisions can be invoked.
2. Appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; if requested by insured or company the appraisers shall also appraise (a) full replacement cost of the described dwelling; (b) full replacement cost of any building upon which loss is claimed; and, (c) full cost of repair or replacement of loss (without deduction for depreciation).
3. If the appraisers fail to agree, they shall submit their differences only to the umpire.

### DECLARATION OF APPRAISERS

STATE OF ___Texas___
COUNTY OF ___Bexar___

We, the undersigned, do solemnly swear that we will act with strict impartiality in making an appraisement and estimate of the value and loss upon the property hereinbefore mentioned, in accordance with the foregoing appointment, and that we will make a true, just and conscientious award of the same, according to the best of our knowledge, skill and judgement. We are not related to the assured either as creditors or otherwise, and are not interested in said property or the insurance thereon.

_____
              (Appraiser)

_____
              (Appraiser)

Subscribed and sworn to before me this ___28th___ day of ___August___, 19__

TRACIE HOLLY
Notary Public, State of Texas
My Commission Expires
JANUARY 6, 2004

_____
NOTARY PUBLIC

PLAINTIFF'S
EXHIBIT
B

## SELECTION OF UMPIRE

We, the undersigned, hereby select and appoint ___Jim Jonus___
act as umpire to settle matters of difference that shall exist between us, if any, by reason of and in compliance with the foregoing agreement and appointment.

Witness our hands this ___28th___ day of ___August___ _____ A.D., 19 2

_____
APPRAISER

_____
APPRAISER

## QUALIFICATION OF UMPIRE

STATE OF _____

COUNTY OF _____

I, the undersigned, hereby accept the appointment of umpire, as provided in the foregoing agreement, and solemnly swear that I will act with strict impartiality in all matters of difference that shall be submitted to me in connection with this appointment, and I will make a true, just and conscientious award, according to the best of my knowledge, skill and judgment. I am not related to any of the parties of this agreement, nor interested as a creditor or otherwise in said property or insurance.

Subscribed and sworn to before me this _____ day of _____ 19_____

_____
NOTARY PUBLIC

## AWARD

TO THE PARTIES IN INTEREST:

We have carefully examined the premises and remains of the property hereinbefore specified, in accordance with the foregoing appointment, and have determined the values and loss to be as follows:

|  | Replacement Cost | Actual Cash Value | Cost of Repair or Replacement of Loss | Amount of Loss |
|---|---|---|---|---|
| Dwelling |  |  |  |  |
| Appurtenant P.S. |  |  |  |  |
| U P P |  |  |  |  |
| A L E |  |  |  |  |
| TOTAL |  |  |  |  |

Witness our hands this _____ day of _____ A.D., 19_____

_____
APPRAISER

_____
APPRAISER

_____
UMPIRE



INSURANCE MANAGEMENT SOLUTIONS, INC.
P.O. Box 33064
ST. PETERSBURG, FL 33064-8064

October 10, 2003

By Fax to phone no: 806-832-5848
And Regular Mail

Mitchell & Associates
PO Box 535
Shallowater, Texas  79363

Attn: Royce Cody

RE:    Insured         : Tex-Mex Cold Storage, Inc
       Claim #         : IC 103 2817
       Date of Loss    : 4-08-2003
       Policy #        : 42-6560002388-C-01
       Location of Loss : 6665 E. 14th St. Brownsville, Texas

Dear Mr. Cody:

Insurance Management Solutions Group acts as claims administrator for ICAT Managers, Inc and AXA Corporate Solutions Lloyds Insurance Company of Texas, your wind policy underwriter.

Please allow this letter to notify you that AXA Corporate Solutions Lloyds of Insurance Company of Texas ("AXA") has serious concerns regarding the appraisal process that is currently underway at your request in relation to the above-referenced claim.

The Policy (Form ICAT DIC 100 (10 01)), policy number 42650002388C, under which you made a request for appraisal provides the following relevant language:

Article I       Insuring Agreement

                A. This Policy insures against all risks of direct physical loss
                   or damage to Covered Property from any external cause, *except as
                   hereinafter excluded* . . .

Article VIII    Valuation

                We shall not pay more than the Actual Cash Value of the
                Covered Property at the time of loss or damage from a
                covered Cause of Loss.  The loss or damage shall be
                ascertained according to such Actual Cash Value.  Actual

PLAINTIFF'S EXHIBIT
C



Cash Value will be determined based on the replacement cost
of the property less depreciation (however caused), but in no
event shall such amount exceed what it would then cost to
repair or replace the Covered Property with material of like
kind and quality at the same location, . . . .

Article XI    Excluded Causes of Loss

This Policy does not insure against loss, expense, damage,
demand or suit arising our of, caused by or resulting from any
Cause of Loss listed in this Article XI, unless specifically
Added by Endorsement. Furthermore, loss, expense and
Damage the result of an excluded Cause of Loss are excluded
from coverage herein whether a covered Cause of Loss that is
covered by this Policy contributes concurrently or in any
sequence to any loss, expense or damage.

. . .
3.   Weather, including but not limited to wind, hail, wind
     driven rain, rain, sleet, snow, ice, sand or dust, tornado,
     waves, wave wash, and wave action.

. . .
17.  Sudden, continuous or repeated seepage or leakage of
     water, liquid or other substance.

. . .
20.  Wear and tear, depreciation, . . ., inherent vice, latent
     defect, deterioration, . . . .

. . .
22.  Dampness of atmosphere, dryness of atmosphere,
     changes in or extremes of temperature, shrinkage,
     evaporation, loss of weight, rust or corrosion, exposure to
     light, contamination, fungus, mold, mildew, wet rot, dry
     rot, deterioration, decay, hidden or latent defect, change
     in flavor or color or texture or finish, whether loss or
     damage from such excluded Causes of Loss is direct or
     indirect, proximate or remote, or be in whole or in part
     caused by, contributed to, or aggravated by a Cause of
     Loss covered under this Policy.

Article XVII   Assistance and Cooperation of the Named Insured

You shall cooperate with Us in the investigation or settlement
of any claim. . . .

Article XXVI  Appraisal

If You and We fail to agree as to the value of the property or

amount of loss, damage or expense, each shall, on written
demand of the either, select a competent and impartial appraiser,
and the appraisal shall be made at a reasonable time and
place. The appraisers shall first select a competent and
impartial umpire, and failing for fifteen (15) days to agree upon
such umpire, then, on the request of the Named Insured or
the Company, such shall be selected by a judge of a court of
record in the state in which such appraisal is pending. The
appraisers shall then appraise the loss, stating separately the
value at the time of loss and the amount of loss, and failing to
agree, shall submit their differences to the umpire. A decision
agreed to by any two shall determine the amount of loss and
shall be binding. You and We shall each pay our chosen
appraiser and shall bear equally the other experts of the
appraisal and umpire. *We shall not be held to have waived
any of Our rights by any act relating to the appraisal.* (emphasis added)

Article XXXI   Inspection of Property and Operations

We and any person or organization making inspections on
Our behalf shall be permitted, but not obligated, to inspect
our property and operations at any time before or after loss.

The Wind and Hail Cause of Loss Coverage Endorsement (Form ICAT NPCP 204 (10
01)) includes the following relevant language:

1. This Policy provides coverage for loss or damage directly caused by
wind and hail.

   . .

All other terms and conditions of this Policy remain.

As you know, AXA has tendered payment to Tex-Mex Cold Storage for the actual cash
value (less the policy deductible) of the covered portion of the roof damage. However, a
disagreement exists between the parties regarding the extent of or scope of the covered loss. We
have requested that our expert, Don Boudreaux of Haag Engineering, be allowed to reinspect the
roof and take samples for testing purposes. However, you have refused to allow Mr. Boudreaux
access to the roof or to take core samples, although we understand that you claim to have given
Mr. Boudreaux permission to take samples during the initial investigation. We now understand
that Thomas Brawner, your selected appraiser, recently suggested to Darren Gerloff, AXA's
selected appraiser, that Mr. Boudreaux could not be expected to change his opinion and that, if an
additional report is needed, an arrangement should be made for someone other than Mr
Boudreaux to reinspect the property.

Your refusal to allow Mr. Boudreaux to reinspect and take samples coupled with Mr
Brawner's comments cause concern. First, Tex-Mex Cold Storage is contractually obligated to
cooperate with AXA in its investigation of the claim and to allow AXA or any person or entity
AXA selects to inspect the property at any time after the loss. Therefore, your continued refusal

to permit Mr. Boudreaux's access to the roof and to allow samples will cause further delay and could jeopardize any additional benefits that AXA may owe to Tex-Mex Cold Storage under the Policy in relation to the roof claim. Furthermore, as discussed below, the appraisal should not go forward until the parties can agree on the extent or scope of the covered portion of the loss. Until we are allowed to reinspect and sample the roof, we do not have the additional data that is needed to reconsider our position on the scope of the loss. Our second concern is that Mr. Brawner's comments do appear to be one of an advocate, not an impartial appraiser.

     We are also concerned that the appraisers do not have the correct policy language. The Agreement for Submission to Appraisers, which the appraisers are apparently using and of which we recently received a copy, is for use with a homeowners' policy. The policy provision for appraisal under the commercial policy issued to Tex-Mex Cold Storage differs from the homeowners' policy provision for appraisal. Therefore, the policy language cited in the Agreement for Submission to Appraisers is incorrect, and the Duties of Appraisers section is not in compliance with the applicable Policy.

     It appears to AXA that the appraisal process, as it is being conducted, exceeds the provisions of the Policy. That is, it appears that the appraisers will not only appraise the value at the time of loss and the amount of loss, as provided for in the Policy, but will also need to determine the scope of the covered portion of loss. The latter task would require the appraisers to determine questions of coverage—i.e., to decide what caused or did not cause the roof damage. Coverage determinations are not appropriate for an appraisal as provided for under the Policy. It is my understanding that an appraisal that includes a determination of coverage will not be binding upon the parties. Therefore, our position is that the appraisal is inappropriate at this time, and we must withdraw our agreement for submission to appraisal. I understand that your client has spent money on Mr. Brawner and perhaps on the umpire. Please be advised that AXA will reimburse you for reasonable expenses incurred in the appraisal process to date for Mr. Brawner and the umpire. Please provide copies of any checks or invoices showing payment.

     While we are not willing to participate in the appraisal process at this time, we will agree to participate in mediation in an effort to resolve all disputes relating to the roof claim. I understand that Mr. Treat talked to you yesterday about the possibility of mediation. We believe mediation is a better venue to resolve all the claims in this case since the parties are free to agree on the scope and cost of repair. In addition, given your objection to HAAG Engineering, AXA is willing to have the reinspection conducted by someone else.

     Any activity by or on behalf of AXA, cannot be construed as an admission of liability or a waiver of any policy rights available to AXA. We expressly reserve all policy rights including any defenses which arise from the express terms and conditions of the policy.

     If your client will agree to withdraw this claim from the appraisal process and move forward with mediation, please have our insured sign below by 5:00, October 10, 2003 and return to me via fax. Thank you for your cooperation and feel free to call me with any questions. I look forward to hearing from you.

As you know, AXA has tendered payment to Tex-Mex Cold Storage for the actual cash value (less the policy deductible) of the covered portion of the roof damage. However, a disagreement exists between the parties regarding the extent of or scope of the covered damage.

If you have any questions concerning this matter, please contact us at 1-800-725-9472, extension 6373.

Very truly yours,


Robert Marr
Property Analyst,  Extension 6373

# Mitchell & Associates

P.O. Box 538
Shallowater, Texas 79363
Phone (806) 789-9339/ (806)832-4240

10-10-03

Insurance Management Solutions Inc.
P.O. Box 33064
St. Petersburg, Fla.33064
Attn. Rob Marr

Rob,

Since our conversation on the phone, and my last fax to you dated 10-10-03, I have looked carefully through the policy.

First I can find no provision in the policy for withdrawing approval for an appraisal after it has been entered into by both the insured and the insurance co.

Secondly, I find no provision in the policy for mediation to be used as a means of settlement in situations where there is disagreement between the policy holder and the insurance co.

I have already told you that we would permit Haag to reinspect at a convenient time for all concerned.  They may still inspect if they will call me and set up the inspection at the earliest possible date, however, we do not feel the need to hold up the appraisal process another 6 weeks while they do so.

I am instructing our appraiser to press on with the process and set a date as expeditiously as possible to complete this process.

Respectfully

Royce Cody

cc: Tom Brawner
     Emilio Sanchez

PLAINTIFF'S EXHIBIT